UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RASHAWN DAVIDSON, | | 15-CR-0310 |
| | Petitioner, | 15-CR-0288 |
| -against- | | 08-CR-0821 |
| UNITED STATES OF AMERICA, | | 22-CV-3591 |
| | Respondent. | DECISION & ORDER |

On or about May 2, 2022, Rashawn Davidson ("Davidson" or "Petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition") challenging his convictions following a jury trial of "conspir[acy] to distribute and possess with intent to distribute . . . cocaine base" in violation of 21 U.S.C. 841(b)(1)(A); and "possess[ion] with intent to distribute" crack cocaine in violation of 21 U.S.C. § 841(b)(1)(B). (Presentence Report, dated Nov. 17, 2017 ("PSR"), ¶ 2.) Davidson contends that both his defense counsel, namely, CJA counsel Richard B. Lind ("Lind"), and privately retained counsel John L. Russo ("Russo") were "ineffective." (Pet. at 5, 15, 23, 27.) Their "deficient performance[s] prejudiced Petitioner by exposing him to a more onerous sentence." (Pet. at 5.) Davidson requests "an evidentiary hearing" in connection with the Petition. (Pet. at 11.)

On or about June 8, 2022, Davidson filed a motion asking the Court to appoint new counsel "[t]o better litigate" his claims and "to correct any deficiencies in Petitioner's Pleadings." (Application for Pro Bono Counsel, dated June 8, 2022, at 1.)

On March 9, 2023, Russo submitted a strong rebuttal to Davidson's claim that Russo was ineffective. (*See* Russo Ltr., dated March 9, 2023.) Lind, who appears to have retired, has not responded to Davidson's claim, although the Government effectively disputes Davidson's claim

1

that Lind was ineffective. (*See* Order, dated Feb. 23, 2023; *see also Hogan v. Ercole*, No. 05–CV–5860, 2011 WL 3882822, at *17 (E.D.N.Y. Sept. 2, 2011).)

**For the reasons stated herein, Davidson's Petition and his Application for Pro Bono Counsel are respectfully denied.[1]**

I.      **Background**

From 2011 through 2015, Davidson was a member of a drug-trafficking gang that "sold crack cocaine and marihuana, among other illegal narcotics" in the Bronx, New York. (PSR ¶ 9.) Davidson was a "wholesale supplier of crack cocaine" and was "responsible for distributing and possessing with intent to distribute at least 840 grams." (PSR ¶¶ 11, 18.)

On March 25, 2015, while on supervised release following his incarceration for a prior drug offense, Davidson was arrested for possession of a plastic bag containing "approximately 53 grams of crack cocaine." (PSR ¶¶ 13–17.) On May 21, 2015, Davidson was charged under Case No. **15-CR-310** with "possess[ion] with intent to distribute" cocaine in violation of 21 U.S.C. § 841(b)(1)(B). (Indictment, dated May 21, 2015 (15-CR-310).) The case was assigned initially to S.D.N.Y. Judge Analisa Torres, and it was subsequently reassigned to this Court on July 20, 2016. (*See* Notice of Case Reassignment to Judge Richard M. Berman, dated July 20, 2016.)

On April 20, 2016, Davidson, along with 28 other co-conspirators, was also charged in Case No. **15-CR-288** (RMB) with "conspir[acy] to distribute and possess with intent to distribute . . . mixtures and substances containing . . . cocaine base, in a form commonly known as 'crack,'" in violation of 21 U.S.C. § 841(b)(1)(A). (*See* Superseding Indictment (15-CR-288), dated Apr. 20, 2016.) On or about May 2, 2016, Russo filed Notices of Appearance in the conspiracy case

---

[1] **Any issues raised by the parties which are not specifically addressed herein were considered by the Court on the merits and rejected.**

before this Court and in the possession case before Judge Torres. (*See* Notices of Appearance,

dated May 2, 2016 (15-CR-310 and 15-CR-288); *see also* Hr'g Tr., dated May 5, 2016 (15-CR-

288), at 2:8–12.)

In sum, this Court proceeded to trial of both 15-CR-310 and 15-CR-288. Russo represented

Davidson throughout Davidson's trial in January and February 2017 and at his sentencing on May

24, 2018.[2]

On February 13, 2017, following a 10-day jury trial, Davidson was found guilty on two

counts, *i.e.*, conspiracy to distribute and possess with intent to distribute cocaine base (crack) in

the amount of 280 grams or more <u>and</u> distribution and possession with intent to distribute cocaine

base (crack) in an amount between 28 and 280 grams.[3]   (2/13/17 Trial Tr. at 1760:25–1761:14.)

The prosecution's evidence at trial was overwhelming and included, among other things, the

testimony of three cooperating witnesses, text messages found on Davidson's phone (which he

used to "offer crack cocaine for sale"), and a court transcript from a prior Federal case (08-CR-

821) in which Davidson admitted that he "distribut[ed] crack cocaine with other people." (Gov't

Resp., dated July 5, 2022, at 21 (citing 2/3/17 Trial Tr. at 820–22).)  On May 24, 2018, the Court

sentenced Davidson to 165 months' imprisonment, followed by five years of supervised release.

(Judgment, dated May 24, 2017, at 2–3.)  Davidson's Guidelines Range was 168 to 210 months.

(PSR ¶ 81.)  His offense level was 32, and his Criminal History Category was IV.  (PSR ¶ 81.)

---

[2] Russo replaced Lind on or about May 2, 2016, after Lind had represented Davidson for purposes of Davidson's violation of supervised release proceedings before this Court in Case No. 08-CR-821; his arraignment, bail proceedings, and motion to suppress evidence before Judge Torres in Case No. 15-CR-310; and his initial appearance and bail proceedings before this Court in Case No. 15-CR-288.

[3] 26 of Davidson's co-conspirators pleaded guilty to conspiracy; *i.e.*, 26 of 29 defendants.

On April 29, 2021, the U.S. Court of Appeals for the Second Circuit affirmed Davidson's conviction and his sentence. *See United States v. Davidson et al.*, 852 F. App'x 596 (2d Cir. 2021).

**Lind and Russo Roles**

On April 24, 2015, Lind was appointed to represent Davidson in the violation of supervised release proceedings before this Court in Case No. **08-CR-821**. (*See* Approval of Appointed CJA Counsel Richard B. Lind, dated Apr. 24, 2015 (15-CR-310).) Lind also represented Davidson from April 2015 through April 2016 in Case Nos. 15-CR-310 and 15-CR-288. On July 14, 2015, Lind (and prior CJA counsel Russell Todd Neufeld) appeared on Davidson's behalf at a status conference before Judge Torres, during which Lind stated: "My understanding, after talking extensively with Mr. Davidson, [as well as with Mr. Neufeld], is that Mr. Davidson wants to stick with me, so to speak, and have me represent him in connection with this case." (*See* Hr'g Tr., dated July 14, 2015 at 2:10–13 (15-CR-310).) Lind represented Davidson in Davidson's (1) violation of supervised release proceedings before this Court in Case No. 08-CR-821; (2) arraignment, bail proceedings, and July 1, 2015 motion to suppress evidence before Judge Torres in Case No. 15-CR-310; and (3) initial appearance and bail proceedings before this Court in Case No. 15-CR-288.

Beginning on or about May 2, 2016, Russo represented Davidson before Judge Torres in Case No. 15-CR-310 and before this Court in Case No. 15-CR-288. On July 7, 2016, Russo filed a letter requesting to transfer Case No. 15-CR-310 to this Court so it would be tried along with Case No. 15-CR-288, "the related multi-defendant matter with which [15-CR-310] is intertwined." (*See* Russo Ltr., dated July 7, 2016.) On July 20, 2016, Case No. 15-CR-310 was reassigned to this Court. (*See* Notice of Case Reassignment to Judge Richard M. Berman, dated July 20, 2016.)

## II.   Legal Standard

To prevail on a claim of ineffective assistance of counsel, "[t]he challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted).  A petitioner must show (1) that counsel's representation "fell below an objective standard of reasonableness" **and** (2) must prove "prejudice" by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984).  The court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 689 (citation omitted).

Where a petitioner fails to state a viable claim for relief, "no further evidentiary inquiry [i]s necessary." *Abad v. United States*, No. 09 Civ. 8985, 2014 WL 521541, at *1 (S.D.N.Y. Feb. 6, 2014).  And, where the court has all the relevant facts to evaluate the petition, the court may deny the petition "as a matter of law, without holding an evidentiary hearing." *Reilly v. Morton*, 213 F.3d 626 (2d Cir. 2000).

"A prisoner has no constitutional right to the assistance of counsel in connection with petitions for post-conviction relief such as habeas corpus or § 2255 relief." *United States v. Doe*, No. 01 Cr. 782, 2005 WL 167601, at *1 (S.D.N.Y. Jan. 25, 2005) (citing *Wright v. West*, 505 U.S. 277, 293 (1992)).  Courts need not appoint appellate counsel unless the petition has "some likelihood of merit." *Alvarez v. Wright*, 797 F. App'x 576, 578 (2d Cir. 2019) (citation and quotations omitted).

Courts may deny ineffective assistance of counsel claims even where counsel is absent. *See, e.g., Hogan*, 2011 WL 3882822, at *17 ("[N]o affidavit was submitted from trial counsel to justify any strategic rationale.").

## III.   Analysis

**Defense Counsel Lind Was Not Ineffective**

<u>Plea Discussions</u>

Davidson contends that Lind "rendered ineffective assistance" in that he allegedly failed to give Petitioner adequate information for him to consider the Government's (unsigned) draft plea agreement, dated April 2016. (Pet. at 5–6.) The draft included a stipulated Guidelines range of 60 to 71 months' imprisonment with a five-year mandatory minimum sentence. (*See* Ex. A to Gov't Resp. (Ltr. to Richard B. Lind, dated April 2016 ("Gov't Ex. A")), at 3.) At the same time, Davidson **"concedes that [Lind] notified Petitioner of the terms of the plea bargain."** (Pet. at 14 (emphasis added).) He argues—unpersuasively and without evidentiary support—that Lind "rejected the offer without consulting Petitioner." (Pet. at 6.) Davidson says that "but for counsel's deficient performance there is a reasonable probability he . . . would have accepted the guilty plea." (Pet. at 12.)

The Government states categorically that it **"never offered a plea agreement to Davidson."** (Gov't Resp. at 10 (emphasis added).) Rather, in April 2016, the Government provided "merely a draft" unsigned agreement, "expressly labeled as such—to facilitate discussion." (*Id.* (citing Gov't Ex. A).) The Government underscores that the plea agreement was never signed by either the Government or by Davidson. (Gov't Resp. at 10.)

By letter addressed to Lind, dated May 28, 2015, the Government advised that "no plea offer is effective unless and until made in writing and signed" by both sides. (*Id.* (citing Ex. B to

6

Gov't Resp. (Ltr. to Richard B. Lind, dated May 28, 2015 ("Gov't Ex. B")), at 2).) "In particular, discussions regarding the pretrial disposition of a matter that are not reduced to writing and signed by [the U.S. Attorneys' Office] cannot and do not constitute a 'formal offer' or a 'plea offer.'" (Gov't Ex. B at 2–3.)

The Petition and the Government response dated July 5, 2022 taken together show that Lind was not ineffective. While there may well have been some plea discussions, there was clearly never a meeting of the minds. *See Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014) (discussions "did not result in the extension of a formal plea offer"); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012). The Government confirms that it "engage[d] in plea negotiations with Davidson, through Mr. Lind," and that "Mr. Lind provided Davidson with sufficient information." (Gov't Resp. at 10, 12 (citing Pet. at 6).) And, as noted, "Petitioner concedes that his Attorney notified Petitioner of the terms of the plea bargain." (Pet. at 14; *see also* Gov't Resp. at 10, 12.) "[B]y conveying the essential terms of the potential agreement, Mr. Lind remained within the 'wide range of reasonableness' that the Second Circuit recognizes for attorney performance." (Gov't Resp. at 12–13 (citing *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)).)

Nor was Davidson prejudiced by Lind's representation during plea negotiations. *See Strickland*, 466 U.S. at 693–94. "[E]ven now [Davidson] does not actually state that he would have accepted the plea agreement, only that he may have." (Gov't Resp. at 9–10; *see also Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (to establish prejudice on claim that counsel failed to present a plea offer, defendant must offer some "objective evidence . . . that he would have accepted the plea offer"); *see also Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998).) Importantly, Davidson (and two of his co-conspirators) elected to go to trial.[4]

---

[4] Davidson's prior federal guilty plea in Case No. **08-CR-821** (before S.D.N.Y. Judge

Probable Cause

Davidson's claim that Lind failed to argue "lack of probable cause" for Davidson's arrest is similarly not supported by the record. (Pet. at 15.) The Government points out that, on July 1, 2015, Lind made a motion before Judge Torres to suppress the crack cocaine evidence seized from Davidson. (*See* Gov't Resp. at 3; *see also* Mot. to Suppress, dated July 1, 2015 (15-CR-310).) During the two hearings on Lind's motion to suppress (held on February 11 and 18, 2016), Lind attacked the officer witnesses' credibility which is "essential to attacking the existence of probable cause." (Gov't Resp. at 14; *see also* Hr'g Tr., dated Feb. 11, 2016; Hr'g Tr., dated Feb. 18, 2016.) The arresting officers testified that they "[o]bserv[ed] Davidson with crack cocaine sticking out of his pants," which "obviously gave the officers probable cause to arrest him." (Gov't Resp. at 14 (citation omitted).)

On April 8, 2016, Judge Torres denied Lind's suppression motion, holding that: "Considering the totality of the circumstances and all the facts available to the officers, I find that the officers had probable cause to arrest Davidson for possession of illegal drugs." (*See* Hr'g Tr., dated Apr. 8, 2016, at 5:25–6:3.) Judge Torres also found that "the inconsistencies identified by [Lind] do not undermine [the] conclusion that the officers testified credibly, and that the material facts establish that there was probable cause for Davidson's arrest." (*Id.* at 6:17–21.)

Davidson has failed to overcome the strong presumption that Lind's performance fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Davidson's arrest was supported by "overwhelming evidence of probable cause." (Gov't Resp. at

George B. Daniels) suggests Davidson's "familiarity" and "experience with the federal criminal system, and the plea-bargaining process," which "further undercuts his claim that he needed more information from Mr. Lind" during plea discussions. (Gov't Resp. 13 (citing *Gist v. United States*, 1:19-cv-5095, 2021 WL 3774289 at \*27 (S.D.N.Y. Aug. 24, 2021) (no ineffective assistance where counsel was aware that defendant "had familiarity with the plea process")).)

14; *see also United States v. Gil*, 792 F. App'x 11, 14 (2d Cir. 2019) ("Observation of what appeared to be . . . cocaine in plain view was clearly sufficient . . . to establish probable cause.").)

**Defense Counsel Russo Was Not Ineffective**

Plea Discussions

Davidson claims that Russo, who was privately retained, "failed to inform Petitioner of at least one plea offer from the Government." (Pet. at 24.) Russo counters unequivocally and persuasively: "**Any plea offer that was proposed by the Government . . . was promptly conveyed and discussed with Mr. Davidson.**" (Russo Ltr. at 2 (emphasis added).) And, the Government confirms that "Davidson has not shown that the Government actually made any plea offers to him while represented by Mr. Russo." (Gov't Resp. at 16.) In fact, "the record is to the contrary" and does not reflect the existence of any formal plea offer. (*Id.*) On the first day of Davidson's trial, the Government confirmed: "The government and defense counsel for all three clients [*i.e.*, Davidson and two co-conspirators] engaged in plea negotiations. No formal plea offers were extended to any clients . . . except for [co-conspirator] Mr. Hart, who . . . did not go through with that plea. No other offers were extended." (1/30/17 Trial Tr. at 11:22–12:3.)

Davidson comments that "after the fact, [he] learned that there was at least one offer from the Government, and possibly two." (Pet. at 24.) But Davidson provides no support for the proposition that one or more plea offers were made—and were not passed along to him. (*See id.; see also Barnes v. United States*, No. 09 CR 1053, 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) ("The absence of a plea offer is fatal to [a defendant's] ineffective assistance of counsel claims.").) Nor has Davidson established prejudice. *See Pham*, 317 F.3d at 182; *see also Gordon*, 156 F.3d at 380–81.

9

Missing Video

Defense counsel was not ineffective with regard to the absence of a police officer's cell phone which presumably had contained a video of Davidson's arrest.[5] Davidson argues that the missing video would have "contradicted the testimony provided by" the arresting officers. (Pet. at 28.). *See Abad*, 514 F.3d 271, 275–76 (2d Cir. 2008).

At trial, Russo made an oral motion requesting a negative inference instruction which "was considered and **denied by the Court**." (Russo Ltr. at 2–3 (emphasis added); *see also* 2/7/17 Trial Tr. at 1289, 1340–48.)  Russo raised the issue of the officer's "claim of accidental destruction of evidence" by "requesting a negative inference instruction" from the Court.  (Russo Ltr. at 2–3.) Russo argued that the officer "destroyed his phone," resulting in the loss of the video, "so that there would be no proof that [the officer's] testimony was false." (*Id.* at 3; *see also* 2/7/17 Trial Tr. at 1289:5–14.)  The Court was not inclined to give an adverse inference instruction:

> **RUSSO:** [T]he adverse inference [jury] charge is [warranted because] . . . . that loss of evidence, is prejudicial in a material way to the defense.  I can think of nothing more material to Mr. Davidson's defense than a videotape that, quite likely, shows the exact opposite occurring as to what [the police officers] said.
>
> **COURT:** . . . . What basis do you have to say that you think that video, based on the testimony that's been produced in this trial, is the opposite of what his testimony was?

(2/7/17 Trial Tr. at 1347:12–1348:6.)

---

[5] The officer testified:

> I was on a car stop. . . . I must have had [my cell phone] in my lap or between my legs somewhere. . . . [After the stop,] I got back in the car, [and] I proceeded to take off.  I looked for the phone, and . . . realize[d] that I did not have it.  I went back to the location where I did the car stop and realized that the cell phone was there in the middle of the road. . . . It was broken.

(2/1/17 Trial Tr. at 495:22–496:9.)

And, during his summation, Russo argued directly to the jury that "you [the jury] can infer that what was on that video does not support [the officers'] version of events nor their testimony." (2/10/17 Trial Tr. at 1566:25–1567:2.) It is clear that both "the Court and the Jury heard a negative inference argument" from Russo.[6] (Russo Ltr. at 3.)

Davidson was not prejudiced by Russo's performance regarding the missing video. *See Strickland*, 466 U.S at 693–94. For one thing, there was a wealth of evidence against Davidson at trial. (*See supra* p.3.) For another, the Court concluded that even without an adverse inference jury instruction, Davidson "will not be prejudiced because [he] ha[s] a witness that [defense counsel is] going to present to this jury, and the jury will make the determination whether they believe the [officer] or they believe [Davidson's] witness." (2/7/17 Trial Tr. at 1348:16–20.) The jurors could draw their own inference about the video and could evaluate witness credibility. As the Court stated, the lack of an adverse inference instruction did "not preclude defense counsel from arguing to the jury, Where is the video?" (*Id.* at 1346:25–1347:1.)

**Evidentiary Hearing Regarding Petition Not Necessary**

The Court finds that Davidson has not stated a "plausible claim of ineffective assistance" and there is no need (and no basis) for a hearing. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quotations omitted). The written submissions of Davidson, the Government, and Russo are sufficient. "[T]he testimony of [Petitioner] and his trial counsel would add little or nothing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

---

[6] Russo elected not "to file an 'overnight' brief on the issue." (Russo Ltr. at 3.) In these circumstances, Russo could not be faulted "for failing to make a [written] motion that would have been futile." *Abad*, 514 F.3d at 276; *see also Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).)

**Request for Appointment of Counsel Lacks Merit**

Because Davidson has failed to demonstrate that his claim(s) have "substance or a likelihood of success on the merits," he has no right to appointed counsel. *United States v. Garrison*, 12 Cr. 214, 2020 WL 5253219, at *1 n.1 (S.D.N.Y. Sept. 3, 2020); *Gonzalez v. United States*, No. 15CV8831, 2022 WL 1517334, at *29 (S.D.N.Y. Apr. 8, 2022).

## IV.     Certificate of Appealability

The Court does not recommend that a certificate of appealability be issued in this case. *See* 28 U.S.C. § 2253(c); *see also United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir. 1997).

## V.     Conclusion & Order

For the reasons stated herein, Davidson's Petition [# 1266] and Motion for Appointment of Counsel [# 1274] are respectfully denied. The Clerk of the Court is requested to send a copy of this Decision & Order to Petitioner and to close this case.

Date: New York, New York

August 15, 2023

**RICHARD M. BERMAN**
**U.S.D.J.**

12